### KRATZER *v.* MATTHEWS.

1. ARREST—WHEN JUSTIFIED WITHOUT A WARRANT.

An officer arresting without a warrant must have reasonable grounds for believing that a felony has been committed, and that the person arrested committed it.[1]

2. FALSE IMPRISONMENT—WHEN OFFICER MAY ASSUME WARRANT LEGALLY ISSUED—ARREST FOR OFFICER IN ANOTHER STATE.

In an action for false imprisonment in arresting plaintiff without a warrant, where it appeared that defendant officer received a telegram from one whom he knew to be a police officer in another State, informing him that a warrant had been issued for a certain person for making false statement, and requesting his arrest, the officer had a right to assume that the warrant was legally issued, and was justified in making the arrest.[2] BIRD, C. J., and WIEST, J., dissenting.

3. SAME — ARREST — WHERE FACTS UNDISPUTED PROBABLE CAUSE QUESTION OF LAW.

Where the facts as to an arrest without a warrant were undisputed, whether there was probable cause became a question of law.[3]

4. ARREST — ARREST FOR MISDEMEANOR NOT JUSTIFIED WITHOUT WARRANT.

Where the offense charged is a misdemeanor, the accused may not be arrested without a warrant; nor is the arrest justified by the fact that the warrant had been issued at the time of such detention and was in the hands of another officer who went to where the accused was detained and placed him under arrest.[4]

Error to Muskegon; Vanderwerp (John), J. Submitted October 22, 1925. (Docket No. 87.) Decided January 28, 1926. Rehearing denied April 6, 1926.

Case by Frank G. Kratzer against William O.

[1]Arrest, 5 C. J. § 30; [2]Id., 5 C. J. § 46; [3]False Imprisonment, 25 C. J. § 159; Malicious Prosecution, 38 C. J. § 193; [4]Arrest, 5 C. J. §§ 14, 31.

Matthews for malicious prosecution and false imprisonment. Judgment for defendant. Plaintiff brings error. Reversed.

*Joseph F. Sanford* and *George H. Cross,* for appellant.

*Carpenter & Jackson,* for appellee.

SHARPE, J. On July 17, 1924, defendant, at that time sheriff of the county of Muskegon, received a telegram from Horace M. Hamilton, captain of detectives at South Bend, Indiana, reading as follows:

"I hold warrant for Frank G. Kratzer charge making false statement now at Antisdale hotel Route One arrest and advise."

While the defendant did not know Mr. Hamilton personally, he knew that he was an officer at South Bend. He directed two of his deputies to go to the Antisdale hotel, where they found plaintiff, arrested him, brought him to Muskegon, and lodged him in jail. Defendant at once notified Detective Hamilton, and received a reply, "Wire immediately if Frank G. Kratzer will return without extradition papers." He took the matter up with the plaintiff and his attorney, and was informed that they would let him know the next day. They did not do so, and he wired Hamilton to send an officer after plaintiff. He received the following reply: "File fugitive warrant for Frank G. Kratzer and hold officer leaving for papers."

On July 21st, plaintiff petitioned for and was granted a writ of *habeas corpus.* On the same day defendant received the following message from a South Bend police officer, sent from Indianapolis: "Advise prosecuting attorney to defend Kratzer *habeas corpus* on way with papers." The *habeas corpus* proceeding was heard on July 22d, and plaintiff was discharged from custody.

The defendant testified on the trial of this case that when plaintiff was first brought to the jail he asked him if he owned the automobile he had at the hotel, and whether he had a driver's license, and that defendant said he did not have a license.   One of the officers then present also so testified.   When plaintiff was discharged on the writ of *habeas corpus*, the defendant made complaint against him for driving without a license.   He directed two of his deputies to watch plaintiff and not permit him to leave the city until the warrant was issued.   These officers stationed themselves near the door of the office of plaintiff's attorney, where he then was, and, when he attempted to leave, detained him.   There is proof that at the time of such detention the warrant had been issued and delivered by the defendant to another deputy, who went to the office where plaintiff was being detained, and placed him under arrest.   He was at once taken before the justice who issued the warrant, and his bail fixed at $200.   At the hearing on the following day, the plaintiff produced a driver's license, and the charge was dismissed.   In the meantime, a copy of the complaint on which the warrant at South Bend had been issued was received by the prosecuting attorney, and a fugitive warrant was issued.   Soon thereafter, an officer from South Bend arrived with proper rendition papers, and the plaintiff was delivered into his custody and taken to South Bend, where he was admitted to bail, and afterwards, and on August 11th, the charge against him was dismissed.

In January, 1925, he began this action against defendant, charging malicious prosecution and false imprisonment.   The jury rendered a verdict of no cause for action.   The plaintiff reviews the judgment entered thereon for defendant by writ of error.   By appropriate assignments, based on the refusal to charge as requested, plaintiff's counsel present the questions discussed by them in their brief.

1. Was the arrest first made justified? It is contended that the information contained in the telegram was not sufficient to justify the arrest. The rule is well established in this State that an officer arresting without a warrant must have reasonable grounds for believing that a felony has been committed, and that the person arrested committed it. The telegram was received from one whom the defendant knew to be a police officer at South Bend. He had a right to assume that the warrant was legally issued. The proofs disclosed that it was. Plaintiff, when shown the telegram, admitted his identity. The facts being undisputed, whether there was probable cause became a question of law. *Schneider* v. *Shepherd*, 192 Mich. 82, 87 (L. R. A. 1916F, 399). In our opinion, the arrest was justified. *Filer* v. *Smith*, 96 Mich. 347 (35 Am. St. Rep. 603), and cases cited. *People* v. *Bressler*, 223 Mich. 597; 2 R. C. L. p. 457. *Malcolmson* v. *Scott*, 56 Mich. 459, relied on by plaintiff, is easily distinguishable. The information on which the defendant acted in that case was contained in a letter, signed by a person unknown to the officer, and did not state that a prosecution had been commenced or warrant issued.

2. Was the arrest made on the charge of driving an automobile without having obtained a driver's license justified? Section 10 of Act No. 368, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 4832 [11]), provides that any person operating a motor vehicle without the required license therefor shall be deemed guilty of a misdemeanor. The trial court charged the jury:

"I also charge you, gentlemen, that if the warrant had actually been issued by Justice Gale before the arrest of Kratzer was upon such warrant or before the arrest of Kratzer was made upon such warrant or before the arrest of Kratzer was made by Officers Sharron and Connelly and such warrant was in the hands of the defendant or any of his deputies then

such warrant was equally so far as the law is concerned, in the hands of Officers Sharron and Connelly, who made the arrest."

While the rule of law thus stated is applicable when the charge is a felony, it is not the law in this State where the charge is a misdemeanor. A similar question was presented in *People* v. *McLean*, 68 Mich. 480. The trial court there instructed the jury that if the warrant charging assault and battery was in the hands of the sheriff, and he and a deputy, called upon by him to assist in making the arrest, were seeking to do so, the arrest made by the deputy was justified, "even though the sheriff was some distance away with the warrant in his possession." In reversing the case for error in this instruction, it was said:

"McLean was charged simply with a misdemeanor, and he could not be arrested for the crime after the commission of the act, without a proper warrant.

"The warrant was issued and delivered to the sheriff. The sheriff is authorized to take such assistance with him in making an arrest as he may deem necessary, and the warrant in his possession while present and pursuing his object will be a justification to his assistants in making the arrest. But he has no authority to send an under-sheriff or deputy to one place to make an arrest without a warrant, while he goes to another for the same purpose with the warrant. He cannot send his deputy into one town or county while he gives pursuit in another. Under the ancient practice of hue and cry, before warrants were issued, this might be done in the pursuit of felons, but no hue and cry could be raised for a misdemeanor.

"We think it clear that in cases of misdemeanors the sheriff must be present either in sight or hearing, directing the arrest, to justify a person not armed with the warrant to make the arrest. Such was not the case here."

The rule of law thus stated was quoted with approval in *McCullough* v. *Greenfield*, 133 Mich. 463, 466 (62 L. R. A. 906, 1 Ann. Cas. 924). It must

be accepted as the law of this State. The rule is, of course, different where an officer accompanies another who has a warrant in his possession, and they are acting in concert in the discharge of their legal duty. *People* v. *Durfee,* 62 Mich. 487.

3. Errors in the admission of testimony. Errors are assigned on the admission of testimony. We need not consider them in view of the conclusion reached that defendant was justified in arresting plaintiff on the Indiana charge. The issue on a new trial will be confined to the unlawful detention of plaintiff on the charge of driving without a license up to the time he was taken in charge by the officer having the warrant, and the proof limited thereto and to the damages plaintiff sustained thereby.

The judgment is reversed and set aside and a new trial granted, with costs to appellant.

STEERE, FELLOWS, CLARK, and MCDONALD, JJ., concurred with SHARPE, J.

WIEST, J. (*dissenting in part*). I am not in accord with the opinion prepared by Mr. Justice SHARPE in so far as he holds the arrest upon the telegram was valid. The arrest on the telegram was bad and the imprisonment false. The telegram did not give information sufficient to constitute reasonable cause to believe a felony had been committed in the State of Indiana, or to justify a complaint before a magistrate by the sheriff and a warrant of arrest. *Malcolmson* v. *Scott,* 56 Mich. 459; *Cunningham & Son* v. *Baker, Peterson & Co.,* 104 Ala. 160 (16 South. 68, 53 Am. St. Rep. 27). Even if the arrest had been good it was the imperative duty of the sheriff to forthwith take the accused before a magistrate and make complaint and, failing to do so, subsequent imprisonment was illegal. The telegram did not disclose, even

*prima facie*, that plaintiff was accused of a felony in Indiana. Suppose the sheriff had applied for a warrant before arrest, as provided by our statute for the apprehension of a fugitive from justice (3 Comp. Laws 1915, § 15887 *et seq.*), or have made complaint after arrest, as required by all authority (*Linnen* v. *Banfield*, 114 Mich. 93, 97; *Oxford* v. *Berry*, 204 Mich. 197), what crime could he have alleged was committed by plaintiff in Indiana? Charging the making of a false statement would have been as meaningless as the telegram for it would not have been at all descriptive of a felony. No such felony is known to our law and none could exist here or elsewhere without further necessary averments. Even now our attention is not directed to any law of Indiana constituting the making of a false statement a felony. We cannot follow counsel for defendant and hold subsequent rendition of the accused by the governor shows a felony was charged in Indiana.

Interstate rendition may be had for treason, felony, or other crime, and the "word 'crime' of itself includes every offense, from the highest to the lowest in the grade of offenses, and includes what are called 'misdemeanors,' as well as treason and felony." *Commonwealth of Kentucky* v. *Dennison, Governor of Ohio*, 24 How. (U. S.) 66, 99.

The Federal Constitution, Art. 4, § 2, subdivision 2, and the Federal statute of 1793 (1 U. S. Stat. p. 302, [U. S. Rev. Stat. § 5278]), do not deal with arrest in advance of requisition.

As stated in *Burton* v. *Railroad Co.*, 245 U. S. 315 (38 Sup. Ct. 108) :

"They do not limit the power of a State to arrest, within its borders, a citizen of another State for a crime committed elsewhere; nor do they prescribe the manner in which such arrest may be made. These are matters left wholly to the individual States. Whether the asylum State shall make an arrest in

advance of requisition; and if so, whether it may be made without a warrant, are matters which each State decides for itself.    Such has been the uniform practice, sanctioned by a long line of decisions and regulated by legislation in many of the States."

I am satisfied the weight of authority authorizes the arrest of a fugitive from justice in case of a charge of felony without a warrant, but there must exist before the arrest reasonable cause to believe a felony has been committed by the person arrested, and it must also appear the exigencies of the occasion preclude opportunity to apply for and obtain a warrant in accordance with the statute.    The information possessed by the arresting officer must be sufficiently comprehensive to enable him to apply for and obtain a warrant, if possible, before arrest, or forthwith after arrest.    Subsequent information will not make a bad arrest good or protect the officer in a suit for false imprisonment.    In case of misdemeanor the right to arrest a fugitive from justice without a warrant does not exist, and an officer of this State making an arrest, at the request of an officer of another State, must take care that it is not for a misdemeanor, and this he can do if he insists upon sufficient information before arrest to enable him to make a complaint after arrest, as the law requires.    The purpose of complaint after arrest is to validate the arrest, make public record of the case, have a magistrate determine whether there was probable cause, to grant the accused opportunity to give bail, except in case of treason or murder, and to prevent arbitrary action by police officers and secret imprisonments.    The right to arrest for a felony without a warrant is permissive only; allowed to meet extraordinary occasions and such an arrest must be validated by taking the prisoner before a magistrate with the least possible delay.

In *Cunningham & Son* v. *Baker, Peterson & Co., supra,* it was said:

"Whether an officer, having authority to make arrests, may not, without warrant, arrest a person in this State whom he has reasonable cause to believe has committed a felony in another State, and to have fled therefrom, is a question, upon which this case does not require the expression of an opinion.   If the authority exists, to support its exercise, there must be reasonable cause to believe that the crime supposed to have been committed is a felony, not a less offense; under the law of the State in which it was committed; that the person arrested committed it, that he is a fugitive from the justice of the State.   Without the concurrence of these facts the arrest cannot be justified.   The telegram which was the moving cause of the arrest, imprisonment, and search, and the only source of all the information the garnishee had, and upon which alone he acted, is incapable of any interpretation or construction, importing that the defendants had been guilty of felony.   The only words which can be supposed to impute criminality, found in the telegram, are the words, 'swindling commission merchants.'   The word 'swindling' has no legal or technical meaning; and commonly, it implies, that there has been 'recourse to petty and mean artifices for obtaining money, which may or may not be strictly illegal.'   *   *   *   Words of such uncertain meaning cannot justify or excuse an invasion of the personal liberty of the citizen, or of him who is within the jurisdiction of the State, entitled to the protection of its laws.   An officer cannot justify an arrest upon the ground, that he had reasonable cause to believe the person arrested had committed a felony, unless he has information of facts, derived from those reasonably presumed to know them, which, if submitted to a judge or magistrate having jurisdiction, would require the issue of a warrant of arrest, and the holding of the accused to await further examination.   *Malcolmson* v. *Scott*, 56 Mich. 459.   We do not deem it necessary to consider the subsequent correspondence with the chief of police of the city of New Orleans. It was not upon this correspondence the arrest, imprisonment and search of the defendants were made, and what it may import is immaterial.   An illegal arrest cannot be justified by facts subsequently ascer-

tained; nor can an arrest made for one purpose, be justified for another."

This language of the supreme court of Alabama is pertinent to the case at bar. The case of *Malcolmson* v. *Scott, supra,* declares legal principles applicable to the case at bar, and the great Justice who wrote that opinion condemned, in plain language, what we are now asked to justify as legal.

It may be said that times have changed and old procedure is not swift enough to meet modern needs. It would seem sufficient answer to this to merely note that constitutional rights remain the same and the statute relative to fugitives from justice has not been enlarged to sanction an arrest without a warrant, except on such cause as would sanction a warrant. Definite telegraphic information may, under extraordinary circumstances, be sufficient to justify the arrest, without a warrant, of a fugitive from justice charged with a felony. It is no hardship to the officer to require him, before making an arrest, to have a reasonable quantum of knowledge of why he is making the arrest.

The facts in the case are not in dispute. We are not yet informed that plaintiff was charged with a felony in Indiana. This record shows plaintiff was arrested in Michigan, July 17, 1924, and that complaint against him for making a false statement was made in Indiana four days after his arrest here. So far as this record shows there was no complaint made against him in Indiana previous to his arrest here, and he was held by defendant without complaint here until discharged by *habeas corpus* proceeding on July 22, 1924. Under the undisputed evidence the only question for the jury was the assessment of damages.

We must leave officers to follow the law or respond in damages for false arrest. The guilty will have no occasion to prosecute for damages and the innocent

ought not to be made to suffer the odium and expense of a false arrest, without remedy, in order that police officers may act without compliance with the law.

The judgment should be reversed and a new trial granted, with costs to plaintiff.

BIRD, C. J., concurred with WIEST, J.

Justice MOORE took no part in this decision.